IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DAVID LEYVA and JOHNY GOMEZ, as Co-Personal Representatives
of THE ESTATE OF TERESA GOMEZ; JOHNY GOMEZ,
on behalf of his daughter, R.G.; VALERIE GOMEZ, on behalf of
her daughter, A.C.; BERTHA LOZANO, and
JERIMIAH GOMEZ,**

  Plaintiffs,

vs.                 No. 2:23-cv-00952-GBW-JHR

**CITY OF LAS CRUCES,
LAS CRUCES POLICE OFFICER FELIPE HERNANDEZ,
POLICE CHIEF JEREMY STORY,
FORMER CHIEF MIGUEL DOMINGUEZ,
and DEPUTY CHIEF SEAN MULLEN,**

  Defendants.

## FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH DUE TO VIOLATIONS OF FEDERAL AND STATE CONSTITUTIONS TO BE FREE FROM THE UNREASONABLE USE OF DEADLY FORCE AND FOR WRONGFUL DEATH UNDER THE NEW MEXICO TORT CLAIMS ACT

COME NOW Plaintiffs, by and through counsel, The Kennedy Law Firm, P.C., and for their first amended complaint state as follows:

### INTRODUCTION

On October 3, 2023, while Teresa Gomez, grandmother of two toddlers and the mother of four, was sitting peacefully in her parked car, Felipe Hernandez, a City of Las Cruces Law Enforcement Officer, approached her car on his bicycle and ordered her to roll her window down. He ordered her from her car as he searched it with his flashlight. It was 4:45 a.m. in the morning in the parking lot of a public housing apartment complex where Teresa Gomez provided care to disabled residents. During his verbally abusive detention of Ms. Gomez, Hernandez used profane

language, addressed Teresa in an overtly aggressive manner, belittled her, and threatened her at times with his taser, violence and at times with arrest and promised to make her life "a living hell." Teresa Gomez, a survivor of domestic violence, first tried to placate, asked him to "be nice," then asked him for a supervising officer, and then withdrew from the verbally abusive and threatening Felipe Hernandez, asking and gaining permission to return to sitting in her car after she found her car keys, slowly pulled her car away from his unlawful detention of her.

As she slowly drove away from Hernandez and when she was no threat of any physical injury to Hernandez or anyone else, Hernandez shot her with no cause from behind into her upper shoulder/lower neck. His bullet traveled downward into her lung. Hernandez left her to bleed out in her car as he turned away from her gasping body to retrieve his bicycle and flashlight. Teresa Gomez was a threat to no one and was leaving the scene of an unlawful, petty misdemeanor investigation. She was a forty-five-year-old loving daughter, mother and grandmother.

This lawsuit is brought to recover compensation for the excruciating and unimaginable lost life of a loving mother, grandmother, daughter, and sister and for the loss of companionship and care for her seventeen-year-old son, her mother, and her two granddaughters.

The court and jurors cannot replace the vibrant life of Teresa Gomez, but Plaintiffs seek to hold the City of Las Cruces and Officer Felipe Hernandez accountable for the precious life they have taken unjustly, and to prevent her families' nightmare from happening to another daughter, mother, grandmother of the City of Las Cruces.

**PARTIES, JURISDICTION AND VENUE**

This amended action is brought pursuant to the 42 U.S.C. Section 1983; the New Mexico Civil Rights Act, NMSA, § 41-4a-3 et al.; and the New Mexico Tort Claims Act, NMSA 1978, § 14-4-12 et al.

1. Plaintiffs David Leyva (Teresa's father) and Johny Gomez (Teresa's eldest son) have been appointed the co-personal representatives of the Wrongful Death Estate of Teresa Gomez.

2. Plaintiff Johny Gomez's mother, Teresa Gomez, the decedent, helped care for his daughter, her granddaughter, R.G., at the time of her death. She would cook, play with, watch with the loving attention of a grandmother, read stories too and purchase toys for R.G. Now, R.G. will grow up without the love and care of her grandmother. Johny relied upon his mother for his love and care of his daughter, R.G. Thus, Johny Gomez brings a loss of consortium claim against Defendants on behalf of his daughter, R.G.

3. Plaintiff Valerie Gomez's mother Teresa Gomez, the decedent, helped care for her daughter, her granddaughter, A.C., at the time of her death. She would join in A.C.'s swimming lessons and play with A.C. and care for her when her mother Valerie needed to rest or clean her home. Now, A.C. will grow up without the love of her grandmother and Valerie without the support of her mother. Thus, Valerie Gomez is bringing a loss of consortium claim against Defendants on behalf of her daughter, A.C.

4. Plaintiff Bertha Lozano, Teresa Gomez's mother, and Jerimiah Gomez, Teresa Gomez's teenage son, both lived with the decedent at the time of her death. Teresa Gomez both cared for her elderly mother and her teenage son, and now both are left to grieve the loss of her daily companionship and care.

5. Defendant City of Las Cruces is a municipality in the State of New Mexico. Plaintiff brings suit against the City of Las Cruces under the New Mexico Civil Rights Act and the New Mexico Tort Claims Act only.

6. Defendant Felipe Hernandez is a City of Las Cruces Law Enforcement Officer. At all times material, he was acting under color of state law and within the scope of his employment with the Las Cruces Police Department (LCPD). He is being sued in his individual capacity and for punitive damages pursuant to Section 1983 of the federal Civil Rights Act for his malicious and reckless behavior toward the decedent, Teresa Gomez.

7. Police Chief Jeremy Story, former Chief of Police Miguel Dominguez, Deputy Chief Sean Mullen are also City of Las Cruces' Law Enforcement Officers sued in their official capacities. Chief Jeremy Story is the City of Las Cruces' Chief of Police, rising up through the ranks of the City of Las Cruces Police Department, having worked in Internal Affairs for LCPD, while Chief Miguel Dominguez was the chief of police from 2019-2022. At all times material, they were acting within the scope of their employment. Plaintiff brings suit against these individual defendants under the New Mexico Tort Claim Act only.

8. Jurisdiction and venue are proper in United States District of New Mexico.

9. Plaintiffs' claims against Hernandez arise under federal law. The court has jurisdiction of the state claims pursuant to the doctrine of pendent jurisdiction as all claims involve the same operative facts.

**FACTUAL BACKGROUND**

10. On October 3, 2023, at about 4:45 a.m., Teresa Gomez was legally parked in her car at the 1300 block of Burley Ct. in Las Cruces, New Mexico. She had a passenger in her car. The passenger's name was Jesus Garcia.

11. Felipe Hernandez was purported to be on bicycle patrol in the area. He was wearing his uniform as a police officer with his badge of office as shown below.



12. Hernandez approached Gomez's car and ordered her to lower her window.

13. Hernandez asked what Gomez was doing in the parking space.

14. Gomez replied that she was there to pick up keys from a woman named "Butterfly."

15. Hernandez then ordered Gomez from her car.

16. Gomez had done nothing unlawful and there was no indicia of unlawful activity.

17. Gomez was reluctant to exit her car as she believed there was no reason to detain her as she had done nothing wrong.

18. Gomez asked Hernandez if she could call someone in his chain of command, and in response to this request and Gomez's reluctance to exit her car, Hernandez immediately threatened to pull Gomez from the car and to tase Gomez if she did not exit the car.

19. Rather than being tased, Gomez complied with the order and exited her car.

20. Hernandez asked Gomez for her name and date of birth.

21. Gomez questioned Hernandez's power to demand identification from Gomez as she had been doing nothing unlawful.

22. Hernandez began to threaten Gomez with arrest and began a profanity laden exchange with Gomez where he repeatedly used "f**k" and "f**king" as adjectives. Hernandez threatened to tow Gomez's car and threatened to make Gomez's life a "living hell."

23. At one point Hernandez recognized Jesus Garcia and began to verbally threaten him with arrest while again using profanity-laced and aggressive language.

24. Gomez was a survivor of domestic abuse and was apprehensive about Hernandez's aggressiveness and abusive language and she pleaded with Hernandez to "be nice."

25. Gomez gave identifying information to Hernandez, her maiden name Leyva and her married name, Gomez.

26. Gomez found in her pocket the car keys she had been searching for and asked her to re-enter her car.

27. Hernandez allowed Gomez to enter her car and take control of the driving column.

28. Gomez started the engine of her car and backed the car up while her door was open.

29. Hernandez grabbed onto the door, then quickly released the door.

30. Gomez began to slowly pull away from the area.

31. Without warning and as Gomez was very slowly driving away from Hernandez, Hernandez fired three rounds at Gomez's car.

32. At least one round struck Gomez and killed her.

33. Gomez began to bleed from her neck and started gasping for air.

34. Rather than providing lifesaving compression to the wound, Hernandez left Gomez to retrieve his bike from its resting spot, apparently afraid that it was at risk of being stolen.

## COUNT I – FOURTH AMENDMENT OBJECTIVELY UNREASONABLE SEIZURE AGAINST DEFENDANT HERNANDEZ

35. Plaintiffs repeat each of the allegations of previous paragraphs as if repeated herein.

36. At the time Hernandez ordered Gomez from the car he seized her within the meaning of the Fourth Amendment. Hernandez detained Gomez by ordering her from her car and ordering her to provide identification.

37. At the time Hernandez seized Gomez, he had no reasonable suspicion nor probable cause that she had or was committing a crime.

38. Gomez did not consent to Hernandez's unlawful seizure of her person.

39. The seizure of Hernandez was unlawful and deprived her of her Fourth Amendment right to be free of unreasonable seizures.

## COUNT II – FOURTH AMENDMENT SEIZURE THROUGH USE OF DEADLY FORCE AGAINST DEFENDANT HERNANDEZ

40. Plaintiffs repeat each of the allegations of previous paragraphs as if repeated herein.

41. When Hernandez shot and killed Teresa, he seized her within the meaning of the Fourth Amendment to the United States Constitution.

42. The seizure of Teresa was unlawful and deprived her of her Fourth Amendment rights to be free of unreasonable seizure within the meaning of the United States Constitution.

43. First, Hernandez had no information that she had violated any law and used profanity to verbally abuse Teresa while unlawfully seizing her person.

44. Second, there is nothing unlawful about a frightened forty-five-year-old woman leaving the area of a verbally abusive, physically threatening, and unlawful seizure.

45. Finally, if Hernandez did have probable cause to arrest Gomez, the use of deadly force to seize her was beyond any measure of reasonableness.

46. The absence of any criminal activity, along with the fact that Gomez was not an immediate threat to anyone, including Hernandez, rendered the use of deadly force against a non-violent fleeing non-misdemeanant an egregious, and an objectively unreasonable use of force.

47. The actions of Hernandez were willful, wanton, malicious and reckless in disregard of the rights of the decedent.

48. The use of force and profanity displays a complete failure to train in appropriate uses of force and appropriate and lawful interactions with the public.

## COUNT III – NEW MEXICO TORT CLAIMS

49. Plaintiffs repeat each of the allegations of previous paragraphs as if repeated herein.

50. Pursuant to Article II, Section 10 Defendant City of Las Cruces, through its employee, Felipe Hernandez, unlawfully seized and battered Gomez as previously alleged and that this seizure and battery resulted in her death.

51. The actions of Defendant City's officer recklessly escalated his confrontation with Teresa Gomez and constituted a battery and an unlawful seizure prohibited by Article II, Section 10 of the New Mexico Constitution within the waiver of NMSA 1978, Section 41-4-12 (2014).

### COUNT IV – SUPERVISORY LIABILITY UNDER THE NEW MEXICO TORT CLAIMS ACT

52. Plaintiffs repeat each of the allegations of previous paragraphs as if repeated herein.

53. Defendants Story, Dominguez and Mullen had supervisory responsibility over the police officers employed with the City of Las Cruces.

54. All supervisory Defendants engaged in a course of conduct in which they each failed to respond appropriately to numerous incidents of unlawful deadly force and excessive force by failing to appropriately screen out, hire, discipline, re-train, supervise or discharge officers who violated constitutional rights while employed with the City and hired and retained those who were psychologically unfit to serve as officers.

55. Their failure to respond with appropriate discipline, discharge of offending officers and re-training was negligent as it fell below their duty of care to people who encounter police officers.

56. Each supervisory Defendant was also responsible to screen potential officers (cadets and applicants) for anti-social behavior as they are aware that anti-social officers are likely to engage in deprivation of citizens' civil rights and in excessive force as Defendant Hernandez did when he killed Gomez.

57. The supervisory Defendants have been negligent in their examination and supervision of encounters between its officers and the public through its failure to critically examine its officers use of aggressive tactics and language, its officers use of quick escalation of use of force and its officers use of excessive and deadly force in unwarranted situations.

58.     While the City of Las Cruces has written policies which prohibit the use of excessive and deadly force unless an officer or the public is immediately threatened with great bodily harm or death, the supervisory Defendants' response to repeated uses of excessive and deadly force shows that they allowed officers to use excessive and deadly force in situations in which there is no threat of great bodily harm or death posed by the subject receiving deadly force.

### COUNT V - VIOLATION OF NEW MEXICO CIVIL RIGHTS ACT

59.     Plaintiffs incorporate fully all previous allegations of this complaint as if stated herein.

60.     The New Mexico Civil Rights Act allows for a direct action against the employing municipality when one of its employees deprives the civil rights of a person.

61.     Defendant City of Las Cruces' employees deprived the decedent, Teresa Gomez, of her right to be free of excessive force by shooting and killing her when she posed no threat of great bodily harm or deadly force to another person, thereby causing her wrongful death, in violation of Article II, Section 10 of the New Mexico Constitution and denying Plaintiffs their right to familial association in violation of their rights to freedom of association, due process pursuant to the New Mexico Constitution's Bill of Rights, Article II, Section 4, and Article II, Section 18.

62.     As a result of Defendant City of Las Cruces employees' actions, Teresa Gomez lost her life and her family, their daughter, mother, grandmother, and sister due to violation of their rights and the rights of Teresa Gomez to be free from unreasonable seizure pursuant the New Mexico Constitution and the New Mexico Civil Rights Act.

63.     New Mexico has a public interest in protecting the right to familial association and to preventing use of excessive and deadly force against citizens.

## COUNT VI - LOSS OF CONSORTIUM UNDER THE NEW MEXICO CIVIL RIGHTS ACT

64. Plaintiffs incorporate by reference the previous paragraphs as though fully set forth herein.

65. City of Las Cruces employees, through their acts and omissions stated herein, caused damage to the decedent's family, her granddaughters, her children, her teenage son, and her mother.

66. The actions of Defendant City in failing to adequately train and supervise, in retaining and ratifying the unlawful behavior of the killing officer, caused the loss of consortium of Plaintiffs as well as Hernandez's unconstitutional act of taking a human life without lawful cause.

67. Defendant Officer Hernandez heightened and created danger during his encounter with Teresa Gomez.

68. Defendant City has failed to require that the police department implement an objective and rigorous internal accountability system to prevent excessive force against the people of Las Cruces.

69. Defendant City's lack of internal oversight and supervision has allowed a culture of aggression to develop within the City's police department promoting an acceptance of unlawful use of deadly force contributing to the shooting death of the decedent.

70. Many of these LCPD shootings resulted in children losing their parents and grandparents.

71. It was foreseeable that Gomez's family would be harmed by the injuries sustained by their mother, grandmother, daughter, and sister. *Brenneman v. Bd. of Regents of Univ. of New Mexico*, 2004-NMCA-003, ¶ 12, 135 N.M. 68, 84 P.3d 685 ("The question of whether Plaintiffs claiming loss of consortium are foreseeable … has already been answered affirmatively by the body of cases recognizing and expanding the loss of consortium claim in New Mexico.").

72. "[D]amages for loss of consortium may be recovered under the Section 41–4–2(A) waiver of sovereign immunity. *Wachocki v. Bernalillo County Sheriff's Dept.,* 2010-NMCA-021, ¶ 50, 147 N.M. 720, 228 P.3d 504 aff'd, 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701.

73. "[A] party may 'recover for loss of consortium if the evidence shows that their relationship with the decedent was sufficiently close financially, socially, or both, and if it was foreseeable that the injury to the decedent would harm the relationship.'" *Wachocki*, 2010-NMCA-021, ¶ 50 (citing *Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 14, 134 N.M. 492, 79 P.3d 836).

74. As a result of the acts and omissions of Defendants herein, Gomez's family is forced to grow up without the companionship, guidance, love, enjoyment, and support of their grandmother, mother, daughter, and sister.

75. As a direct and proximate result of the acts or omissions of Defendants, Plaintiffs will suffer damages including lost love, care, society, companionship, emotional pain and suffering, lost earning capacity, loss of enjoyment of life, and loss of financial support.

76. Loss of consortium is not a separate tort for which suit may be brought under the Tort Claims Act but, rather, is a derivative action that results from the bodily injury of a person who is injured and sues within the proper confines of the Act. *Brenneman v. Bd. of Regents of Univ. of New Mexico*, 2004-NMCA-003, ¶¶ 9-10, 135 N.M. 68, 84 P.3d 685.

77. Defendants are liable for the consortium loss suffered by Teresa Gomez's minor son, mother, and grandchildren.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to do the following:

A.  Assume jurisdiction over this matter.

B.  Enjoin any further violations of state constitutional rights pursuant to the New Mexico Civil Rights Act for those living within the City of Las Cruces:

   1)  Require that all LCPD officers undergo a psychological, medical, and polygraph examination to assess their fitness for duty;

   2)  Institute a strong presumption against hiring officers from other agencies, or the military who were fired for on-the-job performance, especially for allegations of dishonesty or excessive force;

   3)  Require all officers to be trained in crisis intervention;

   4)  Require all officers to be trained to recognize the signs of mental impairment, including mental disability and illness, and train them how to communicate effectively with those individuals;

   5)  Develop protocol to ensure that CIT officers are involved in scene management during an incident;

   6)  Develop pre-deployment protocol for special operations units, which includes consultation with a CIT officer;

   7)  Revise the use of force policy to require that officers report all force and that use of force receives meaningful review and punishment if excessive; and,

   8)  Require that those subject to force receive immediate medical services when injured, if officers have time to have contemplated the use of force, emergency medical services are on stand-by.

    9)    Award compensatory damages because Teresa Gomez and her estate suffered wrongful death, economic loss, funeral expenses, loss of enjoyment of life, pain and suffering, loss of consortium; and attorney fees, pre-judgment and post-judgment interest, costs, and expenses in bringing this action.

C.    Award punitive damages against Officer Felipe Hernandez to punish him and deter other LCPD officers from similar, wonton, malicious, reckless and unconstitutional behavior.

Respectfully Submitted,

THE KENNEDY LAW FIRM, P.C.

***/s/ Joseph P. Kennedy***
Joseph P. Kennedy
Shannon L. Kennedy
*Attorneys for Plaintiffs*
P.O. Box 26776
Albuquerque, NM 87125-6776
P: 505-244-1400 / F: 505-244-1406
slk@civilrightslaw.com
jpk@civilrightslaw.com